UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | CASE NO. C18-1031JLR<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |

## I. INTRODUCTION

Before the court is Plaintiff State of Washington's ("the State") motion to remand. (Mot. (Dkt. #12).) Defendant Facebook, Inc. ("Facebook") opposes this motion. (Resp. (Dkt. # 17).) The court has considered the motion, the relevant portions of the record,

//

//

//

//

ORDER - 1

and the applicable law. Being fully advised,[1] the court GRANTS the State's motion to remand and DENIES the State's request for attorneys' fees under 28 U.S.C. § 1447(c).

## II. BACKGROUND

The State filed this action in state court to enforce the Fair Campaign Practices Act ("the Act"), RCW 42.17A, which provides for the maintenance and disclosure of certain campaign finance information. (Compl. (Dkt. # 1-1).) The State alleges that Facebook violated the Act by failing to maintain and make available for public inspection documents and books of account containing statutorily required information concerning political advertising sponsored through Facebook's online platform. (*Id.* at 1.)

The Act declares that the State has a public policy of ensuring "that political campaign and lobbying contributions and expenditures [are] fully disclosed and that secrecy is . . . avoided." RCW 42.17A.001(1). Of particular relevance here, the Act requires "commercial advertisers" who accept or provide political advertising or electioneering communications during an election campaign to maintain documents and books of account and to make those records available for public inspection during normal business hours for no less than three years after the date of the applicable election. RCW 42.17A.345.

The Act provides two enforcement mechanisms: (1) through the state Public Disclosure Commission ("the Commission"), *see* RCW 42.17A.105(8), .110; and (2)

---

[1] Neither party requests oral argument on the motion (*see* Mot. at 1; Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

through the filing of a lawsuit by the state Attorney General or the local prosecuting authority in state court, *see* RCW 42.17A.765 (2010).[2]  The Act also allows for citizen actions in limited circumstances.  RCW 42.17A.775.  A citizen may bring an action to enforce the Act only after the Commission or the Attorney General declines to bring a suit.[3]  *Id*.  In bringing a citizen action, the citizen acts "in the name of the state."  *Id.* Any judgment awarded escheats to the State, although the citizen may seek reasonable attorneys' fees and costs from the award.  RCW 42.17A.775(5).

According to the State, Facebook sells political advertising through its online platform, thus making it a "commercial advertiser" under the Act.  (Compl. ¶ 4.7.)  The State maintains that candidates and political committees reported $3.1 million in payments related to political advertising on Facebook since 2008, including over $600,000.00 to Facebook directly.  (*Id.* ¶¶ 4.7-4.13.)  However, the State also alleges Facebook has not maintained all the information required under the Act for commercial advertisers.  (*Id.*)  The State asserts that, during Washington elections held between 2013

---

[2] Three days after the State filed its action in state court, the Legislature amended portions of RCW ch. 42.17A.  Laws of 2018, ch. 304, § 14, effective June 7, 2018.  The state Attorney General retains the right to file an enforcement suit in the name of the State, but now can only file suit once the matter has been referred to the Attorney General's Office by the Commission.  *See* RCW 42.17A.765(1).  Prior to this amendment, the Attorney General or local prosecution authority could file an enforcement action without any referral.  RCW 42.17A.765 (amended June 7, 2018).  The change, however, is immaterial to the court's determination of this motion.

[3] The Legislature also amended the citizen suit provisions of the Act.  Laws of 2018, ch. 304, § 16, effective June 7, 2018; (*see also* Dalton Decl. (Dkt. # 12-1) ¶ 4.)  These changes to the citizen suit process pertain to the pre-filing requirements but do not change the general parameters of a citizen suit.  RCW 42.17A.775(2), (3), & (4); (*see* Dalton Decl. (Dkt. # 12-1) ¶ 5, Ex. A (attaching the former version of RCW 42.17A.765(4) (2012)).)

and 2018, Facebook was paid between $75,000.00 to in excess of $1 million for political advertising and that these payments were not documented and reported as required under the Act. (*Id.* ¶¶ 4.22-4.27.)

Facebook also allegedly failed to make documents and books of accounts available for public inspection for campaigns between 2013 and 2018. (*Id.* ¶ 4.13.) In particular, the State points to the experiences of Eli Sanders and Conner Edwards, who allegedly contacted Facebook to inspect the records required to be maintained by the Act and were denied access. (*Id.* ¶¶ 4.14-4.19.) On April 11, 2018, Mr. Edwards sent the state Attorney General a citizen action notice concerning Facebook's failure to provide public access to information required under RCW 42.17A.345. (*Id.* ¶ 4.20.)

On June 4, 2018, the State commenced this action in King County Superior Court. (*See id.* at 1.) The State seeks civil penalties and costs and fees, as well as injunctive relief to compel Facebook to comply with the Act's commercial advertiser disclosure requirements. (*Id.* ¶¶ 6.1-6.5.) Facebook's counsel accepted service of process on June 14, 2018. (*See* Stafford Decl. (Dkt. # 4), ¶ 2, Ex. 1 at 18 (attaching Acceptance of Service).)

Facebook filed a notice of removal on July 13, 2018. (Not. of Removal (Dkt. # 1) at 1.) Facebook asserts that removal is proper because the parties are diverse pursuant to 28 U.S.C. § 1332(a)(1). (*See id.* at 1-2.) Specifically, Facebook asserts that the State "brought suit on behalf of two Washington citizens [Mr. Sanders and Mr. Edwards], the real parties in interest, and Facebook is a citizen of states other than Washington." (*Id.* at 2.) The State moves to remand the action, arguing that it is a real party in interest and a

state cannot be a party to a diversity suit. (Mot. at 1.) The court now considers the State's motion.

### III. DICUSSION

#### A. Legal Standard

A defendant may remove an action commenced in state court if the federal court would have had original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a); *see also Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005). The removing party bears the burden of proving that federal jurisdiction exists, and the court strictly construes the removal statute against removal jurisdiction. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). The removing party bears the burden of proving federal jurisdiction not only at the time of removal, but also in opposing a motion for remand. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Any doubts as to federal jurisdiction should be resolved by remanding the action to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

#### B. Motion to Remand

Facebook argues that removal in this case is proper because the real parties in interest are diverse. (Not. of Removal at 2.) Specifically, Facebook argues that the State is not a real party in interest, and instead points to Mr. Sanders and Mr. Edwards, both Washington citizens, as the real parties in interest. (*Id.* at 3-4.) The State argues that it is the real party in interest and its presence in the suit destroys diversity of citizenship and requires remand. (*See generally* Mot.) As discussed below, the court concludes that the State is a real party in interest and, therefore, remands this suit to state court.

A district court may exercise diversity jurisdiction over a case where (1) more than $75,000 is in controversy, and (2) all plaintiffs are of diverse citizenship from all defendants. 28 U.S.C. § 1332(a). A court ordinarily looks to the face of the complaint to determine whether diversity of citizenship exists. *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). Here, the complaint alleges that the plaintiff is the State of Washington. (Compl. ¶ 2.1.) A state is not a citizen of itself and thus cannot be a party to a diversity action. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 290 n.44 (1985) (*citing Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482 (1894)); *Fifty Assocs. v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir. 1970). Therefore, based on the face of the complaint, diversity jurisdiction does not appear to exist in this matter.

However, the mere presence of a state as a party plaintiff will not defeat diversity jurisdiction if the state has no real interest in the controversy. *Dept. of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 (9th Cir. 2011) ("*Lucent*"). Instead, a court must "look behind the pleadings" and identify the "real party in interest" in a lawsuit. *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174-75 (2014). To qualify as a real party in interest, a state must have something more than a "general governmental interest" in the litigation. *Lucent*, 642 F.3d at 737-38 (*citing Mo., Kan. and Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 60 (1901)). General governmental interests include protecting citizens or securing compliance with the state's laws. *Id.* A state that is a real party in interest has a "specific, concrete" interest in the outcome of the litigation. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012) ("*Nevada*"). Thus, a state's presence in a lawsuit will defeat diversity jurisdiction "only if 'the relief

sought is that which inures to it alone.'" *Lucent*, 642 F.3d at 737-38 (*quoting Hickman*, 183 U.S. at 60). Put otherwise, the state must be a 'real and substantial part[y] to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980). In making this determination, courts consider the substantive state law and "the essential nature and effect of the proceeding as it appears from the entire record." *Lucent*, 642 F.3d at 738, 740.

Two recent Ninth Circuit Court of Appeals decisions guide the court's analysis here. First, in *Lucent*, the Ninth Circuit considered whether the California Department of Fair Employment and Housing ("DFEH") was the real party in interest in a suit brought on behalf of a single employee against an employer for alleged violations of state anti-discrimination laws. 642 F.3d at 735-36. Although California's Fair Employment and Housing Act established that California had an interest in protecting its citizens from employment discrimination, the Ninth Circuit concluded that this interest was too "general" to render the state an interested party in the controversy. *Id.* at 738.

Moreover, the Ninth Circuit noted that the state largely sought remedies—reinstatement and compensatory and punitive damages—that were also available to the employee and benefited only him, not the state. *Id.* at 739. Although the state also sought relief that inured to it alone—specifically, the retraining of the defendant's employees—the Ninth Circuit held that when viewing the "essential nature and effect of the proceeding as it appears from the entire record," this relief was "tangential" to the employee's relief and did not give the state an interest in the controversy. *Id.* at 739-40.

//

Thus, the Ninth Circuit concluded that the aggrieved employee, and not DFEH, was the real party in interest. *Id.* at 740.

A year later, in *Nevada*, the Ninth Circuit considered the same issue when Nevada's Attorney General brought a *parens patriae* suit against Bank of America for misleading consumers about mortgage and foreclosure proceedings in violation of Nevada's consumer protection law. 672 F.2d at 661, 665. Evaluating its prior precedent in *Lucent*, the Ninth Circuit stated that "[t]he finding that the aggrieved individual was the real party in *Lucent* compels the conclusion that Nevada is the real party in interest here." *Id.* at 669. The Ninth Circuit noted that, unlike the "general" law enforcement interest of DFEH in *Lucent*, Nevada had been "particularly hard hit" economically and socially by the mortgage crisis, providing the state a "specific, concrete interest" in the case's outcome. *Id.* at 670. In particular, Nevada had an interest in protecting the integrity of mortgage loan servicing and in eliminating the deceptive practices that contributed to the mortgage crisis. *Id*; *see also California v. Purdue Pharma L.P.*, No. SAVC 14-1080-JLS, 2014 WL 6065907, at *3-4 (C.D. Cal. Nov. 12, 2014) (finding that the state had a substantial, specific interest in a suit brought by the state and two counties against pharmaceutical manufacturers alleging that the manufacturers' advertising campaigns contributed to a statewide opioid addiction epidemic).

Moreover, unlike in *Lucent*, Nevada sought substantial relief "available to it alone," including penalties and injunctive relief that were subject to a lesser evidentiary standard than for private litigants. *Id.* at 671. Although the state also sought restitution for consumers who were impacted by the Bank's actions, the Ninth Circuit concluded

that the state's sovereign interest was "not diminished merely because it . . . tacked on" a claim for restitution. *Id.* at 671-72. Once again examining the "essential nature and effect of the proceeding as it appears from the entire record," the Ninth Circuit concluded this time that the state was the real party in interest. *Id.* at 672.

Facebook argues that this case is more like *Lucent*, whereas the State argues that this case is more like *Nevada*. (Resp. at 1-3; Reply (Dkt. # 18) at 7-9.) Applying the guidance the Ninth Circuit provides in both *Lucent* and *Nevada*, and examining "the essential nature and effect of the proceeding as it appears from the entire record," *see Nevada*, 672 F.3d at 670 (*citing Lucent*, 642 F.3d at 740), the court agrees with the State and concludes that this action is more like *Nevada* than *Lucent* and that Washington is a real party in interest.

First, the State has a "specific, concrete" interest in ensuring fair and transparent elections in Washington. *See Nevada*, 672 F.3d at 670. The State has a declared interest in "assur[ing] continuing public confidence of fairness of [state] elections and governmental processes." RCW 42.17A.001; *see also* RCW 42.17A.300(1)(a) ("Timely disclosure to voters of the identity and sources of funding for electioneering communications is vitally important to the integrity of state, local[,] and judicial elections."). This interest is more than a "general governmental interest." *Lucent*, 642 F.3d at 737 (internal citation omitted). Indeed, courts have repeatedly recognized that ensuring fairness in elections is a fundamental sovereign interest "that is essential to the proper functioning of a democracy." *See, e.g.*, *John Doe No. 1 v. Reed*, 561 U.S. 186, 197-98 (2010) (finding that "[t]he State's interest in preserving the integrity of the

electoral process is undoubtedly important" and "[t]hat interest also extends more generally to promoting transparency and accountability in the electoral process") (internal quotation marks omitted); *see also Human Life of Wash., Inc., v. Brumsickle*, 624 F.3d 990, 1008 (9th Cir. 2010) (finding that the State has a "well-recognized governmental interest" in "providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas"). The core of the State's action here is to ensure transparency in Washington campaigns and elections. (Reply at 7.) Thus, the court concludes that the State has a specific and concrete interest in the outcome of this suit.

Second, that the relief requested inures to the State alone also compels the conclusion that the State is a real party in interest. *Nevada*, 672 F.3d at 671. The State primarily seeks civil penalties, treble damages, and costs and fees—relief available only to the State. (*See* Compl. at ¶¶ 6.1-6.2, 6.4); *see also* RCW 42.17A.765(5) (2012) (current version at RCW 42.17A.780 (2018)). The State also seeks injunctive relief to compel compliance with the commercial advertiser disclosure requirements generally, not to compel Facebook to provide Mr. Sanders or Mr. Edwards with access specifically. (Compl. at ¶ 6.3); *see also* RCW 42.17A.750(1)(h) (2013) (current version at RCW 42.17A.750(1)(i) (2018)). The relief here inures solely to the State and is therefore unlike the restitution and punitive and compensatory damages requested by DFEH on behalf of the aggrieved employee in *Lucent*. *See Lucent*, 642 F.3d at 735-36. Should the State succeed on the merits of its case, any penalties or damages will be deposited in the state treasury; no individual citizen has a claim to this relief. *See* RCW 42.17A.785.

Indeed, the State's argument here is even more compelling than in *Nevada* because unlike the statute at issue there, the Act here does not contemplate individual restitution at all, and the State has requested none. (Compl. at ¶¶ 6.1-6.5; Reply at 9); *see also* RCW 42.17A.765 (2013) (current version at RCW 42.17A.775 (2018)). Accordingly, the court is unpersuaded by Facebook's attempt to analogize this suit to *Lucent*, and finds instead that *Nevada* compels the conclusion that the State is the real party in interest here.[4]

The fundamental flaw in Facebook's argument is its focus on Mr. Sanders and Mr. Edwards. Facebook argues that the State cannot have a distinct or substantial interest in this action because it was Mr. Sanders and Mr. Edwards who were denied access to

---

[4] Facebook points to other non-binding, factually dissimilar lower court cases. (Resp. at 4-5). The court is similarly unpersuaded by these cases. Facebook's cases involve either anti-discrimination statutes like the one in *Lucent* or instances where a private party misjoined a state to defeat diversity jurisdiction. *See Washington v. Matheson Flight Extenders, Inc.*, No. C17-1925RAJ, 2018 WL 2440643, at *2 (W.D. Wash. May 31, 2018) (finding that the State's interest in enforcing the Washington Law Against Discrimination on behalf of an aggrieved citizen was too general to render it a real party in interest); *Oregon ex rel. Nw. Pub. Commc'ns Council v. Qwest Corp.*, 563 F. App'x 547, 548 (9th Cir. 2014) (affirming denial of remand because the state had been misjoined as a sham party for purposes of defeating diversity jurisdiction); *Reinhardt v. Mont. Human Rights Bureau*, No. CV 10 27 H CCL, 2010 WL 5391280, at *3 (D. Mont. Dec. 17, 2010) (finding that the state respondents in an employment discrimination dispute were not real parties in interest). As described above, the State's interest in ensuring fair and transparent elections is fundamentally dissimilar from the generalized interest in preventing employment discrimination. Similarly, the misjoinder cases are inapplicable because there are no allegations of misjoinder here, as all of those cases involve an individual attempting to join a state as a party plaintiff to avoid removal.

The only other case Facebook cites is also not persuasive. In *California v. Northern Trust Corp.*, No. CV 12-01813-DMG (FMOx), 2013 WL 1561460, at *3 (C.D. Cal. Apr. 10, 2013), the court declined to find that the state had a substantial interest in a suit brought by a city attorney, in the state's name, on behalf of the city's retirement pension fund. In that case, the court found that the state lacked a substantial interest because the complaint did not implicate a "harm to the broader public or the State's interest in vindicating any public interest." *Id.* at *3. As discussed above, the State's interest in protecting the integrity of elections is more compelling and concrete than an interest in the mismanagement of one employer's pension system.

Facebook's records. (Resp. at 4-5.) The fact that two Washington citizens were denied access to records and brought the issue to the attention of the State is irrelevant to the determination of whether the State is a real party in interest. *See e.g.*, *Nevada*, 672 F.3d at 665-66 (detailing that the state brought that action based on complaints to the Nevada Attorney General from consumers, housing counselors, and other industry sources). The Act here does not create individual rights. *See, e.g.*, *No on I-502 v. Wash. NORML*, 372 P.3d 160, 162 (Wash. Ct. App. 2016) ("[T]he underlying claim [under the Act] always belongs to the state."). Indeed, the State explicitly brought this suit on its own behalf to assert its sovereign interests in ensuring the fairness and transparency of state elections, not to rectify any rights specific to Mr. Sanders or Mr. Edwards. (*See* Mot. at 2; Compl. at ¶¶ 6.1-6.5).

Facebook also argues that the State is not a real party in interest because the Act provides for the possibility of a citizen action. (Not. at 3-4.) The fact that Mr. Sanders or Mr. Edwards could have brought a citizen action, however, is irrelevant to whether the State is a real party in interest for two reasons. First, even if Mr. Sanders or Mr. Edwards had been given leave to file a citizen action, they would have been statutorily required to sue in the name of the State, and any award in their favor would have escheated to the State. *See* RCW 42.17A.775(1), (5). Second, as discussed above, the State did not request any relief that would accrue to any individual citizen or that a citizen could have requested on his or her own behalf; all the relief requested inures solely to the State. (*See* Compl. at ¶¶ 6.1-6.5); RCW 42.17A.750, .765, .785. The State's position is even stronger than *Nevada*, where the state "tacked on" restitution for individuals harmed by

Bank of America's deceptive mortgage servicing practice. 672 F.3d at 671-72. Here, the State does not request any individual relief whatsoever. (*See* Compl. at ¶¶ 6.1-6.5) The court concludes that Facebook has cherry-picked Mr. Sanders and Mr. Edwards' brief participation in the underlying facts, instead of considering the record as a whole, *see Nevada*, 672 F.3d at 670 (*citing Lucent*, 642 F.3d at 740), which demonstrates the State's specific and concrete interest in ensuring fair and transparent elections.

The court concludes that because the State has a specific, concrete interest in the litigation and has requested relief that inures to it alone, the State is a real party in interest. *See Nevada*, 672 F.3d at 671-72. Because the State is a real party in interest, there is no diversity of citizenship in this matter. *See Atascadero State Hosp.*, 473 U.S. at 290 n.44 ("Nor could a suit against a State be brought under diversity jurisdiction, because a State is not a citizen of itself for such purposes."). Accordingly, the court concludes that Facebook improperly removed this action and, therefore, grants the State's motion to remand.

**C.     Attorneys' Fees**

Federal law provides that a district court remanding a case "may [also] require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *see also Patel v. Del Taco, Inc.,* 446 F.3d 996, 999 (9th Cir. 2006). Attorneys' fees are not automatically awarded on remand. *Martin*, 546 U.S. at 139. "Absent unusual circumstances," attorneys' fees should be awarded only "where the removing party lacked an objectively reasonable basis for seeking removal." *Id*. at 141. Conversely, when an objectively reasonable basis for

removal exists, the motion for fees should be denied. *Id.* Removal is not objectively unreasonable merely because the removing party's argument lacks merit, "or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). The basis of removal is objectively reasonable if "a reasonable litigant in [the defendant's] position could have concluded that federal court was the proper forum in which to litigate [the plaintiff's] claims . . . ." *Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007). A court may award fees outside of this general rule if it finds that unusual circumstances exist, although this departure "should be faithful to the purposes of awarding fees under § 1447." *Martin*, 546 U.S. at 141.

Although the court is not persuaded by Facebook's arguments, the court finds that Facebook's basis for removal was not objectively unreasonable. A reasonable litigant in Facebook's position could have concluded that this action satisfied all requirements for diversity jurisdiction and that federal court was the proper forum for the action. Accordingly, the court denies the State's request for attorneys' fees under 28 U.S.C. § 1447(c).

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS the State's motion to remand to state court and DENIES the State's motion for attorneys' fees under 28 U.S.C. § 1447(c) (Dkt. #12).

//

//

The court further ORDERS that:

1. Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court of King County, Washington;

2. Pursuant to 28 U.S.C. § 1447(c), the Clerk shall mail a certified copy of the order of remand to the Clerk for the Superior Court of King County, Washington;

3. The Clerk shall also transmit the record herein to the Clerk for the Superior Court for King County, Washington;

4. The parties shall file nothing further in this matter, and instead are instructed to seek any further relief to which they believe they are entitled from the courts of the State of Washington, as may be appropriate in due course; and

5. The Clerk shall CLOSE this case.

Dated this 29th day of October, 2018

_____
JAMES L. ROBART
United States District Judge